IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| HONORABLE TERRY PETTEWAY, | § | |
| HONORABLE DERRECK ROSE, | § | |
| HONORABLE MICHAEL MONTEZ, | § | |
| HONORABLE PENNY POPE, | § | |
| HONORABLE SONNY JAMES, | § | |
| HONORABLE STEPHEN HOLMES, | § | |
| HONORABLE PATRICK DOYLE and | § | |
| ROOSEVELT HENDERSON, | § | |
| | § | Civil Action No. 3:11-cv-511 |
| *Plaintiffs* | § | |
| | § | |
| vs. | § | |
| | § | |
| GALVESTON, TEXAS; and | § | |
| THE HONORABLE MARK HENRY, in | § | |
| his capacity as Galveston County Judge | § | |
| | § | |
| *Defendants* | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiffs, THE HONORABLE TERRY PETTEWAY, THE HONORABLE DERRICK ROSE, THE HONORABLE MICHAEL MONTEZ, THE HONORABLE PENNY POPE, THE HONORABLE SONNY JAMES, THE HONORABLE PATRICK DOYLE THE HONORABLE STEPHEN D. HOLMES AND ROOSEVELT HENDERSON (hereinafter referred to as "Plaintiffs"), and file this Original Complaint complaining of Defendants, GALVESTON COUNTY, TEXAS, and

MARK HENRY, in his capacity as GALVESTON County Judge (hereinafter referred to as "Defendants"), and in support thereof would show the Court as follows:

## I.

## <u>INTRODUCTION</u>

1.    On or about August 2, 2011, the Galveston County Commissioner Court posted an agenda item as follows:  "Discuss and consider approval of a preliminary plan for County Commissioners, Justices of the Peace and the Constables Precinct Boundaries for the purpose of redistricting related to the 2010 Census submitted by County Judge."  (See Exhibit 1).

2.    Subsequently, in the minutes of the meeting, the words "and consider approval of a" were struck through and no action was taken.  (See Exhibit 2).

3.    Subsequently, public hearings were scheduled to take place on the redistricting process in five separate locations in Galveston County on August 15, 16, 17, 22 and 23, 2011.  (See Exhibit 3).

4.    During the public hearings public discussion was held with regard to a total of five different plan options.  The law firm hired by Galveston County presented two separate proposals for redistricting of County Commissioner precinct lines and one separate proposal for redrawing the Constable and Justices of the Peace precinct lines.  Commissioner Stephen Holmes also presented an alternative plan for redistricting of County Commissioner lines as well as a proposal to retain the existing precinct lines for the Constable and Justices of the Peace precincts.

- 2 -

5.     On August 30, 2011, the Galveston County Commissioners' Court adopted an order establishing boundaries of the Commissioners, Constables and Justices of the Peace Precincts in Galveston County ("Redistricting Order").  (See Exhibit 4).

6.     The plan adopted by the Galveston County Commissioners Court reduces the number of Constables and Justices of the Peace Precincts in Galveston County from eight to five and alters the boundaries of most of the Commissioner, Constable and Justices of the Peace precincts in Galveston County.

7.     In 1992, a Consent Judgment and Election Order was entered in the case of "Leroy Hoskins, et al. vs. John Hannah, et al." Civil Action No. G-92-12 in the United States District Court for the Southern District of Texas Galveston Division.  (See Exhibit 5).

8.     That Order provided for the creation of a Constable and Justice of the Peace Precinct on Galveston Island consisting of voting precincts numbered 107, 108, 109, 310, 311, 313, 314.

9.     The Court Order further created a Constable and Justice of the Peace Precinct on the Mainland of Galveston County consisting of voting precincts 112, 129, 132, 133, 319, 330, 331, 334, 336 and 337.

10.    The Court Order specifically stated that the creation of these Constable and Justice of the Peace precincts "will create the opportunity for minority voters to participate in the political processes leading to the nomination and election of Justices of the Peace and Constables in Galveston County".

11.   The proposed plan adopted by Galveston County Commissioners Court on August 30, 2011, eliminates the Constable Precincts and Justice of the Peace Courts that were created by the 1992 Order by merging them into one single larger Constable and Justice of the Peace Precinct.  The proposed plan also reduces the percentage of African American and Latino voting age population in all of the newly proposed precincts.  .

12.   Galveston County made a submission under Section 5 of The Voting Rights Act to the Department of Justice for pre-clearance of its August 30th, 2011, redistricting plan for redistricting of the Commissioner Precincts on or about October 14th, 2011.  (See Exhibit 6).

13.   Galveston County made another submission under Section 5 of The Voting Rights Act to the Department of Justice for pre-clearance of its August 30th, 2011, redistricting plan for redistricting of the Constable and Justice of the Peace Precincts on or about October 19th, 2011.  (See Exhibit 7).

14.   On November 14, 2011, Plaintiffs filed this action seeking declaratory and injunctive relief to prevent Defendants from using the newly enacted but not yet precleared Plan in any election.  Plaintiffs bring this action pursuant to the United States Constitution and 42 U.S.C. § 1983, as well as 42 U.S.C. §1973 (Section 2 of the Voting Rights Act of 1965, as amended) and 42 U.S.C. § 1973c (Section 5 of the Voting Rights Act of 1965, as amended).  The Plan would harm minority voters, including Plaintiffs, by reconfiguring the boundaries of most of the existing

Commissioner, Constable and Justice of the Peace Precincts in Galveston County. The injury to minority voters throughout the County as a result of the reconfiguration of the precincts is neither necessary nor justified.

15.   The Plan violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, by significantly minimizing the opportunities for minority voters to participate in the political process and to elect Representatives of their choice.

16.   The Plan was drawn to ensure that population gains in minority communities from 2000 to 2010 do not afford minority voters increased electoral opportunity equal to their population.

17.   Although the Latino population accounted for approximately 50% of Galveston County's population growth between 2000 and 2010, Latinos and African Americans are denied the opportunities they were afforded under the existing boundaries.  This proposed new configuration constitutes an unlawful dilution of minority voting strength under Section 2 of the Voting Rights Act, and the Fourteenth and Fifteenth Amendments to the United States Constitution.

18.   The Plan was drawn with the purpose, and has the effect, of minimizing and reducing the strength of minority populations in Galveston County.  While the pre-2011 map contains several effective minority opportunity districts, the Plan contains no such districts.  Reducing the number of effective minority opportunity districts constitutes unlawful retrogression under Section 5 of the Voting Rights

Act, Section 2 of the Voting Rights Act, and the Fourteenth and Fifteenth Amendments to the United States Constitution.

19.   Plaintiffs are in the process of furnishing substantial information and data to the DOJ including but not limited to, copies of the 1992 Order that will prove the Plan is in violation of the Voting Rights Act.

20.   Plaintiffs are in the process of obtaining and submitting expert reports to DOJ for the purpose of convincing DOJ to deny preclearance.

21.   The map as adopted by Galveston County is legally unenforceable unless and until preclearance is granted.  *See* 42 U.S.C § 1973c.

22.   The DOJ will have at least 60 days to consider the information submitted by Galveston County.

23.   On or about November 7th, 2011, the United States District Judges, Orlando Garcia, Jerry Smith and Xavier Rodriquez issued an Amended Order which among other things established deadlines with respect to the 2012 primary election for federal, state, county and local offices.  That Amended Order established that the first day to file an application for a place on the primary ballot will be November 28th, 2011, and the last day shall be December 15th, 2011.  (See Exhibit 8).

24.   At this point, it is highly unlikely, if not certain, that Defendants will be unable to secure preclearance of the Plan before the recently revised filing period for the

2012 primary election which begins on November 28, 2011[1] and other events related to the next election are well underway or concluded.

25.     Although Galveston County and other Texas counties are obligated to redistrict County Commissioner precincts and other election boundaries if the 2010 Census shows the precincts to be malapportioned, any new precincts must be precleared pursuant to Section 5 of the Voting Rights Act before they may be implemented.

26.     Accordingly, Plaintiffs are entitled to an injunction against the implementation of the Plan for this election.

27.     Plaintiffs are also entitled to a hearing to consider evidence for the construction of an interim plan as well as an order adopting such interim plan for use during this election.

## II.

## JURISDICTION AND VENUE

28.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1357, and 2284; and pursuant to 42 U.S.C. §§ 1973c, 1973j(f).   Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201, 2202, and 2284, as well as by Rules 57 and 65 of the Federal Rules of Civil Procedure.   Venue is proper pursuant to 28 U.S.C. §§ 1391(b).

---

[1]     The Three Judge Court in *Perez, et al. v. State of Texas et al*., Civ. Action No. 5:11-CV-00360-OLG-JES-XR, (W.D. Texas 2011), issued an order modifying election deadlines. The first day to file for a place on the ballot for the primary is November 28, 2011 and the last day is December 15, 2011.

29.     Plaintiffs seeks attorneys' fees and costs pursuant to 42 U.S.C. §1973 l(e) and 1988.

30.     Plaintiffs request a three-judge court be convened to hear this cause pursuant to 28 U.S.C. §2284 and 42 U.S.C §1973c.

## III.

## PARTIES

31.     Plaintiff, the Honorable Terry Petteway, The Honorable Derrick Rose, The Honorable Michael Montez, The Honorable Penny Pope, The Honorable Sonny James, the Honorable Patrick Doyle, and the Honorable Stephen D. Holmes are citizens and registered voters and elected officials who serve in several of the Constable, Justice of the Peace and Commissioner precincts that are affected by the County's proposed redistricting plans.  Plaintiff, Roosevelt Henderson, is a citizen and registered voter residing in a precinct that is affected by the County's proposed redistricting plans.  Plaintiffs have standing to bring this action under 42 U.S.C. § 1983 to redress injuries suffered through the deprivation, under color of state law, of rights secured by the Voting Rights Act of 1965, as amended, 42 U.S.C. §§ 1973, 1973c, and by the United States Constitution.

32.     Plaintiff, The Honorable Terry Petteway, is an African American and a resident of Galveston County and is presently serving as the Galveston County Constable of Precinct No. 2, located at the Sam Popavich Building, 1922 Sealy, Galveston, Texas, 77550.

33.     Plaintiff, The Honorable Derreck Rose, is an African American and a resident of Galveston County and is presently serving as the Galveston County Constable of Precinct No. 3, located at 203 Vauthier, LaMarque, Texas  77568.

34.     Plaintiff, The Honorable Michael Montez, is a Latino and a resident of Galveston County and is presently serving as the Galveston County Constable of Precinct 5, located at 2516 Texas Ave., Texas City, Texas, 77590.

35.     Plaintiff, The Honorable Penny Pope, an African American and a resident of Galveston County and is presently serving as the Galveston County Justice of the Peace of Precinct 2, located at 1922 Sealy, Sam Popovich Annex, Galveston, Texas, 77550.

36.     Plaintiff, The Honorable Sonny James, is an African American and a resident of Galveston County and is presently serving as the Galveston County Justice of the Peace of Precinct 3, located at 203 Vauthier Road., LaMarque, Texas 77568.

37.     Plaintiff, The Honorable Patrick Doyle, is a resident of Galveston County and is presently serving as the Galveston County Commissioner of Precinct 1, located at 722 1st Street, Galveston, Texas 77550.

38.     Plaintiff, The Honorable Stephen D. Holmes, is an African American and a resident of Galveston County and is presently serving as the Galveston County Commissioner of Precinct 3, located at 722 1st Street, Galveston, Texas 77550.

39.     Plaintiff, Roosevelt Henderson, is an African American and a resident of Galveston County and a resident of County Commissioner Precinct 3 and Constable and Justice of the Peace Precinct 3.

40.     Defendant, GALVESTON COUNTY is a political subdivision of the State of Texas and is a covered jurisdiction under the Voting Rights Act. Galveston County, Texas may be served by service upon Mark Henry, County Judge at 722 1st Street, Galveston, Texas 77550.

41.     Defendant, THE HONORABLE MARK HENRY is County Judge of Galveston County.  Defendant HENRY is sued in his official capacity.  Defendant HENRY is the Chief Officer of GALVESTON County. Mark Henry, County Judge of Galveston may be served at 722 1st Street, Galveston, Texas 77550.

## IV.

## FACTS

### *Reapportionment*

42.     Every ten years, under U.S. Constitution, Art. I, Sec. 2, Cl. 3, a federal census is performed.

43.     In Galveston County the total citizen population increased from 250,158 in 2000 to 291,309 as of the completion of the 2010 census. The African American population in Galveston County was 38,625 in 2000 and it increased to 39,326 in 2010.  The Latino population was 44,939 in 2000 and it increased to 65,522 in 2010.

- 10 -

44.  Approximately 50% of the population growth in Galveston County between 2000 and 2010 can be attributed to minority growth and specifically to growth in the Latino community.

45.  For almost twenty years since the implementation of the 1992 consent judgment, Latinos and African Americans have benefited from several Constable and Justices of the Peace opportunity precincts, including but not limited to, precinct numbers 1, 2, 3 and 5.

46.  Despite accounting for approximately 50% of the growth in Galveston County over the last decade, the proposed Plan virtually eliminates any opportunity district, for Latinos and African Americans, including but not limited to, those previously created by the 1992 consent judgment.

47.  When comparing how the minority and in particular the Latino population has changed from 2000 to 2010 across the county and as compared to the current boundaries, the proposed Constable and Justice of the Peace Precinct boundaries reduce the overall Latino population, and the percentage of Latino voting age population in all of the newly proposed boundaries below the current percentage of Latino voting age population for precincts 1, 2 and 5.

48.  For example, under the currently existing boundaries, precinct 1, 2 and 5 have now grown respectively to 26.50%, 29.40% and 29.50% of Latino voting age population ("VAP").

49.   Under the proposed boundaries of the county plan as set forth in the August 30th, 2011 redistricting order the highest percentage of Latino voting age population ("VAP") in any of the five newly proposed precincts is 24.49%.

50.   Further, while the overall county saw the Latino population share increase by approximately 50% from 44,939 (approximately 18% of the total population of the county) to 65,522 (22.4% of the total population of the county), the Latino population share is decreased in in all of the newly proposed Constable and Justice of the Peace Precinct boundaries below the current percentage of Latino population for precincts 1, 2 and 5.

51.   The CVAP for current Constable and Justice of the Peace Precincts 1, 2 and 5 helps determine the opportunities Latinos have to select their candidate of choice in elections for that office.

52.   The Latino population is sufficiently cohesive and compact to justify an opportunity district under Section 2.

53.   When comparing how the minority and in particular the African American population has changed from 2000 to 2010 across the county and as compared to the current boundaries, the proposed boundaries reduce the overall African American population, and the African American voting age population in newly proposed Constable and Justice of the Peace precincts 2 and 3.

54.   For example, under the currently existing boundaries of Constable and Justice of the Peace precincts 2 and 3 the share of African American voting age population

has grown to 37.56%, and 48.37%.   Under the proposed boundaries of the August 30th, 2011 redistricting order, the highest percentage of African American voting age population ("VAP") in any of the five proposed Constable and Justice of the Peace Precincts is 27.79% in precinct 3.   The percentage of African American voting age population in the remaining four new precincts proposed by the August 30th, 2011 redistricting order is less than 7.67%.

55.   The CVAP for precinct 2 and 3 helps determine the opportunities African American have to select their candidate of choice in elections for that office.

56.   The African American population is sufficiently cohesive and compact to justify an opportunity district under Section 2.

57.   The August 30th, 2011 redistricting plan for the Galveston County Constable and Justice of the Peace precincts retrogresses the ability of the African American and Latino voters to elect candidates of their choice in the 2011 Plan as a whole.

58.   In particular, the August 30th, 2011 Plan retrogresses the ability of African American and Latino voters to elect candidates of their choice in virtually any of the Galveston County Constable and Justice of the Peace Precincts proposed in the August 30th, 2011.   The following table accurately compares the precincts under the existing boundaries:

**Existing Districts Total Population**

| District | Persons | Deviation | Hispanic % of Total Population | Non-Hispanic Anglo % of Total Population | Non-Hispanic Black % of Total Population | Non-Hispanic Asian %of Total Population | Non-Hispanic Other% of Total Population |
|---|---|---|---|---|---|---|---|
| 1 | 36,018 | -1.09% | 30.22 | 52.71 | 11.16 | 3.92 | 0.08 |
| 2 | 12,708 | -65.10% | 32.37 | 26.63 | 38.46 | 0.61 | 0.12 |
| 3 | 23,163 | -36.39% | 20.19 | 28.96 | 48.69 | 0.45 | 0.10 |
| 4 | 30,305 | -16.78% | 14.63 | 80.17 | 3.21 | 0.50 | 0.09 |
| 5 | 37,350 | 2.57% | 29.22 | 45.59 | 22.39 | 1.11 | 0.13 |
| 7 | 60,107 | 65.07% | 23.12 | 66.35 | 5.35 | 3.24 | 0.20 |
| 8 | 89,241 | 145.07% | 17.93 | 67.74 | 7.26 | 4.92 | 0.18 |
| 9 | 2,417 | -93.36% | 14.60 | 81.18 | 0.66 | 0.74 | 0.08 |
| **Totals** | **291,309** | | | | | | |

**2011 Adopted Districts Total Population**

| District | Persons | Deviation | Hispanic % of Total Population | Non-Hispanic Anglo % of Total Population | Non-Hispanic Black % of Total Population | Non-Hispanic Asian %of Total Population | Non-Hispanic Other% of Total Population |
|---|---|---|---|---|---|---|---|
| 1 | 88,852 | 52.50% | 17.94 | 67.70 | 7.27 | 4.93 | 0.18 |
| 2 | 83,092 | 42.62% | 24.96 | 62.62 | 7.96 | 2.56 | 0.18 |
| 3 | 84,740 | 45.45% | 27.64 | 39.08 | 29.26 | 2.12 | 0.10 |
| 4 | 32,208 | -44.72% | 14.93 | 78.82 | 4.18 | 0.57 | 0.08 |
| 5 | 2,417 | -95.85% | 14.60 | 81.18 | 0.66 | 0.74 | 0.08 |
| **Totals** | **291,309** | | | | | | |

**Existing Districts Voting Age Population**

| District | Total VAP | Hispanic % of Total VAP | Non-Hispanic Anglo % of Total VAP | Non-Hispanic Black % of Total VAP | Non-Hispanic Asian %of Total VAP | Non-Hispanic Other% of Total VAP |
|---|---|---|---|---|---|---|
| 1 | 29,371 | 26.50 | 57.23 | 10.46 | 4.06 | 0.09 |
| 2 | 10,008 | 29.40 | 30.67 | 37.56 | 0.71 | 0.14 |
| 3 | 17,292 | 17.31 | 32.58 | 48.37 | 0.50 | 0.08 |
| 4 | 23,167 | 12.70 | 82.81 | 2.70 | 0.52 | 0.10 |
| 5 | 27,410 | 25.90 | 50.26 | 21.24 | 1.24 | 0.11 |
| 7 | 44,140 | 19.49 | 70.42 | 5.14 | 3.28 | 0.18 |
| 8 | 63,708 | 15.81 | 70.55 | 7.06 | 4.96 | 0.15 |
| 9 | 2,046 | 10.51 | 85.78 | 0.68 | 0.73 | 0.05 |
| **Totals** | **217,142** | | | | | |

**2011 Adopted Districts Voting Age Population**

| District | Total VAP | Hispanic % of Total VAP | Non-Hispanic Anglo % of Total VAP | Non-Hispanic Black % of Total VAP | Non-Hispanic Asian %of Total VAP | Non-Hispanic Other% of Total VAP |
|---|---|---|---|---|---|---|
| 1 | 63,408 | 15.81 | 70.52 | 7.08 | 4.97 | 0.15 |
| 2 | 61,170 | 21.35 | 66.80 | 7.67 | 2.61 | 0.16 |
| 3 | 65,934 | 24.49 | 43.84 | 27.79 | 2.30 | 0.10 |
| 4 | 24,584 | 13.02 | 81.45 | 3.69 | 0.60 | 0.09 |
| 5 | 2,046 | 10.51 | 85.78 | 0.68 | 0.73 | 0.05 |
| **Totals** | **217,142** | | | | | |

59.    The 2011 redistricting plan for the Galveston County Commissioner precincts retrogresses the ability of the African American and Latino voters to elect candidates of their choice in the 2011 Plan as a whole.

60.    In particular, the 2011 Plan retrogresses the ability of African American and Latino voters to elect candidates of their choice in County Commissioner Precincts 1 and 3.

61.    Galveston County Commissioner Precinct 1 in the existing redistricting plan has a minority (African American and Latino) voting age population of about 35% and elects the candidate of choice of minority voters.  In the new 2011 Galveston County Commissioner Precinct redistricting plan Precinct 1's minority voting population is reduced to about 28%.

62.    Galveston County Commissioner Precinct 3 in the existing Galveston County redistricting plan has a minority voting age population of about 61% and elects the candidate of choice of the minority voters.  In the new 2011 Galveston County Commissioner Precinct 3's minority voting age population is reduced to about 58% with the African American voting age population of the districts being reduced from 35% to 30.6%.

*The Voting Rights Act*

63.    On September 25, 1975, the Voting Rights Act of 1965 ("Act") was extended and amended to cover the State of Texas.  State and political subdivisions covered by the Act must comply with certain procedures under the Act, as amended, 42

U.S.C. 1973(c).  Among them is the Section 2 requirement that states show that any new redistricting plan does not dilute the voting strength of minority communities.  Where minority communities have diminished opportunity to elect candidates of their choice, their voting strength has been diluted, and so unlawfully abridged under the Act.

64.     Also, among the Act's provisions is the Section 5 preclearance requirement[2] that certain States and political subdivisions must show that any new redistricting plan "does not have the purpose and will not have the effect of denying or abridge the right to vote on account of race or color . . . ."  To make this showing, Galveston County must demonstrate that those drafting its redistricting plan did not possess racially discriminatory intent, and that the adopted plan does not cause a retrogressive effect of minority voting strength.

### Alternative Redistricting Plans

65.     Alternative Justice of the Peace and Constable redistricting plans show that the minority opportunity districts can be drawn within the confines of accepted traditional redistricting principles.  In fact, alternative plans for Constable and Justice of the Peace Precinct boundaries exist that would preserve and improve the minority election effectiveness of minority  opportunity districts.

---

[2]     28 CFR §51.52 places upon Galveston County the burden of securing a determination that the proposed voting change does not have a discriminatory effect upon minority voting strength and was not adopted pursuant to a discriminatory purpose.

66. The proposed Plan does not create any Constable and Justice of the Peace Precinct where either Latino or African American voters have a chance for an opportunity to elect a candidate of their choice.  The proposed plan creates a Precinct that reaches all the way across the Galveston causeway to capture and merge minority voters from the Mainland with those on Galveston Island to create one precinct in which the respective percentages of African American and Latino VAP is lower than it would be in at least three of the existing Constable and Justice of the Peace Precincts. In the process the county's proposed map eliminates the minority opportunity precincts previously created by court order and further destroys African American and Latino voters opportunity to elect candidates of their choice in any other precinct in Galveston County.   (See Exhibit 9).

67. The Proposed Constable and Justice of the Peace Precinct 3 is composed of areas that do not have a common political interest.

68. The addition of these dissimilar communities was designed to prevent African American and Latino voters from having the opportunities to elect candidates of their choice.

69. Similarly alternative plans for County Commissioner that preserved minority opportunity districts and were widely supported by the community were submitted to the County Commissioners Court and rejected.

## Count 1

70. Plaintiffs reallege the facts set forth above.

- 18 -

71.     The Plan cannot be administered because it has not been precleared pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c.

72.     Because the plan will not be precleared in time for the upcoming election, Plaintiffs are entitled to a Temporary Restraining Order and a Preliminary Injunction prohibiting the implementation of the unprecleared Plan for this election.

73.     Plaintiffs request that, pursuant to 28 U.S.C §2284 and 42 U.S.C. §1973c, a three-judge court be convened to hear this cause and are further entitled to have the Court adopt an interim plan for use in this election.

74.     In the event the Plan is never precleared, Plaintiffs are entitled to an order adopting the interim plan for all future elections this decade.

**Count 2**

75.     Plaintiffs reallege the facts set forth above.

76.     The County's proposed Constable, Justices of the Peace and Commissioner Precinct Redistricting Plan violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, in that, under the totality of the circumstances, Plaintiffs and minority voters are denied an equal opportunity to participate effectively in the political process and to elect candidates of their choice to the Constable/JP Courts and Commissioners Court.  The Plan also violates Section 2 of the Voting Rights Act, 42 U.S.C. §1973, because, under the totality of circumstances, Plaintiffs and minority voters are denied an equal opportunity to participate effectively in the

- 19 -

political process and to have any meaningful or significant influence in elections for Members of Constable/JP Courts and Commissioners in Galveston County.

## Count 3

77.    Plaintiffs reallege the facts set forth above.

78.    The Plan violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it intentionally discriminates against Latino and African American persons by denying them an equal opportunity to participate in the political process, to elect candidates of their choice to the offices of Constables and Justices of the Peace, and to have any meaningful or significant influence in elections for Members of the Constable/JP Courts and Commissioners Court.

## Count 4

79.    Plaintiffs reallege the facts set forth above.

80.    The Plan violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because its districts are racial gerrymanders, drawn with excessive and unjustified use of race and racial data.

## V.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court:

1.    Assume jurisdiction of this action.

2.  Issue a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rules of Civil Procedure Rule 57, declaring that the Plan for Galveston County's Constable/JP and Commissioner Courts boundaries: (1) dilutes the voting strength of minority voters in violation of Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, and in violation of the Equal Protection Clause; (2) is an unconstitutional gerrymander in violation of the First and Fourteenth Amendments to the United States Constitution and Article I of the United States Constitution; and (3) cannot be administered pursuant to Section 5 of the Voting Rights Act, as amended, 42 U.S.C. § 1973c.

3.  Issue a temporary restraining order, preliminary and permanent injunctions enjoining the Defendants, their agents, employees, and those persons acting in concert with them, from enforcing or giving any effect to the proposed boundaries as drawn in the Plan, including enjoining Defendants from conducting any elections for the Constable/JP and Commissioner Courts based on the 2011 Plan.

4.  Issue preliminary and permanent injunctions enjoining the Defendants, their agents, employees, and those persons acting in concert with them, from enforcing or giving any effect to the unlawful voter registration practices.

5.      Make all further orders as are just, necessary, and proper to ensure complete fulfillment of this Court's Declaratory and injunctive orders in this case.

6.      Issue an order requiring Defendants to pay Plaintiffs' costs, expenses and reasonable attorneys' fees incurred in the prosecution of this action, as authorized by the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988 and by the Voting Rights Act, 42 U.S.C. § 1973l(e).

7.      Grant an order retaining jurisdiction over this matter until the Defendant, their agents, employees, and those persons acting in concert with them have complied with all orders and mandates of this Court; and

8.      Grant such other and further relief as it seems is proper and just.

Dated this 14th day of November, 2011.

Respectfully Submitted,

**BRAZIL & DUNN**


 */s/ Chad W. Dunn*
Chad W. Dunn – Attorney In Charge
State Bar No. 24036507
BRAZIL & DUNN
K. Scott Brazil
State Bar No. 02934050
4201 FM 1960 West, Suite 530
Houston, Texas  77068
Telephone:  (281) 580-6310
Facsimile:   (281) 580-6362
chad@brazilanddunn.com
scott@brazilanddunn.com


NEIL G. BARON
Texas State Bar No. 01797080
LAW OFFICE OF NEIL G. BARON
914 FM 517 W, Suite 242
Dickinson, Texas 77539
Telephone (281) 534-2748
Facsimile  (281) 534-4309
neil@ngbaronlaw.com

**ATTORNEYS FOR PLAINTIFFS
PETTAWAY, ROSE, MONTEZ, POPE
AND JAMES**

JOSE GARZA - Attorney in Charge
Texas State Bar No: 07731950
LAW OFFICE OF JOSE GARZA
7414 Robin Rest Dr.
San Antonio, Texas 78209
Telephone (210) 392-2856
garzpalm@aol.com

MELISSA C. KILLEN
Texas State Bar No. 24034367
KAUFMAN & KILLEN, INC.
100 W. Houston St., Suite 1250
San Antonio, Texas 78205
Telephone (210) 227-2000
Facsimile (210) 227-2001
melissa@kk-lawfirm.com

**ATTORNEYS FOR PLAINTIFFS**
 **DOYLE AND HOLMES**