IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| HONORABLE TERRY PETTEWAY, | § | |
| HONORABLE DERRECK ROSE, | § | |
| HONORABLE MICHAEL MONTEZ, | § | |
| HONORABLE PENNY POPE, | § | |
| HONORABLE SONNY JAMES, | § | |
| HONORABLE STEPHEN HOLMES, | § | |
| HONORABLE PATRICK DOYLE, and | § | |
| ROOSEVELT HENDERSON, | § | |
| | § | Civil Action No. 3:11-cv-511 |
| Plaintiffs, | § | |
| | § | |
| VS. | § | |
| | § | |
| GALVESTON COUNTY, and THE | § | |
| HONORABLE MARK HENRY, in his | § | |
| Capacity as Galveston County Judge | § | |
| | § | |
| Defendants | § | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

NOW COMES Galveston County and The Honorable Mark Henry, in his official capacity as Galveston County Judge, by and through the undersigned counsel, and submits this Response to Plaintiffs' Application for a Temporary Restraining Order and Preliminary Injunction.

Plaintiffs are seeking a Temporary Restarting Order and Preliminary Injunction to prevent the implementation of two validly drawn redistricting plans which Defendants have submitted for preclearance in compliance with Section 5 of the Voting Rights Act, 42 U.S.C. §1973c. Plaintiffs' action in this matter is premature. Defendants, in their submission to the Department of Justice, indicated that they had no intention of implementing the redistricting plan submitted prior to obtaining preclearance either from

- 1 -

the Department of Justice or from the District Court for the District of Columbia.[1] (See Defendants' submissions to the Department of Justice – page 5 of submission of Galveston County Commissioner precinct filed October 14, 2011 and page 6 of the submission of the Galveston County justice of the peace and constable precincts filed October 19, 2011). The Defendants will not hold primary elections in these precincts if it does not receive preclearance from the Department of Justice or the District Court for the District of Columbia prior to the primary date.

The Department of Justice may take as long as 60 days to respond to a request for preclearance but may grant preclearance before the expiration of the 60 days. 42 U.S.C. §1973c. Defendants in this matter have requested expedited consideration and from our discussions with representatives of the Voting Section of the Justice Department we are anticipating an answer prior to the statutory deadline of December 15, 2011. The Department of Justice has been informed of the time constraints on the elections at issue for Galveston County is attempting review in light of those time constraints. We would note that at this time over half the allocated 60 day time period has already expired. No substantive comments or objections have currently been filed with the Department of Justice although Plaintiffs in this case have indicated that they would have materials forthcoming. As they indicated in their filings in this matter they have not so done. While the Department of Justice likes to provide opportunity for potential commentators to respond, clearly continuing to await Plaintiffs comments and objections in this matter appears to be intentional gaming of the system. If Plaintiffs complaint comprises the

---

[1] Defendants have filed a companion declaratory judgment action *Galveston County, Texas v. United States of America, et al*. Case Number 1:11-cv-01837-ABJ-JRB-RMC. This case has been filed in a manner to ensure that the Department of Justice must provide any answer to the preclearance submission no later than December 18, 2011.

1463999v.5  IMANAGE 105773

extent of the materials and objections which they intend to send to the Department of Justice, this matter could be mooted in relatively short order since Plaintiffs' objections, particularly as applied to the Commissioners Court, are without merit and the Department of Justice or the District Court for the District of Columbia should grant preclearance. It is highly likely that preclearance will be obtained in time to allow the elections for County Commissioner to be held under the districts that have been submitted for preclearance.

### GALVESTON COUNTY HAS TIMELY SOUGHT PRECLEARANCE

The factually unsubstantiated claim by Plaintiffs that Galveston County has not timely filed for preclearance under Section 5 of the Voting Rights Act is without merit. As specifically described above, Galveston County has made two administrative preclearance submissions to the Department of Justice wherein expedited consideration has been requested. Additionally, Galveston County has initiated a declaratory judgment action in the United States District Court for the District of Columbia.

The Department of Justice is acutely aware of the time constraints facing the State of Texas. A review of the Notices of Section 5 Activity maintained on the Department of Justice website indicates that fifty-five Texas Counties have made submission on or after the date Defendants submitted and are awaiting preclearance notices.[2]

---

[2] Notices of Section 5 Activity can be found at http://www.justice.gov/crt/about/vot/notices/noticepg.php. The fifty-five other counties who have submissions filed on or after Galveston are Anderson, Armstrong, Austin, Borden, Bowie, Burleson, Burnet, Carson, Castro, Chambers, Cherokee, Cochran, Collin, Crane, Culberson, Dawson, Delta, Denton, Dickens, Ector, Franklin, Garza, Glasscock, Goliad, Hale, Hall, Hardeman, Hemphill, Hidalgo, Hockley, Hopkins, Irion, Jack, Jackson, King, Leon, Liberty, Limestone, Lipscomb, Madison, Marion, Medina, Montague, Newton, Potter, Randall, Rusk, Smith, Sterling, Tarrant, Upshur, Val Verde, Washington, Young.

1463999v.5  IMANAGE 105773

**THE COUNTY COMMISSIONERS PRECINCTS ARE A FAIR REPRESENTATION OF MINORITY VOTING STRENGTH IN GALVESTON COUNTY**

Determining the appropriate number of majority minority districts within a jurisdiction is a function of both the geographic distribution of those minorities within the jurisdiction as well as the respective numeric proportions of the minorities amongst the population of the jurisdiction as measured by the minorities' potential legal voting strength.  This last question has been determined by both the United States Supreme Court and with the Fifth Circuit to be the citizen voting age population.  *LULAC v. Perry*, 548 U.S. 399 (2006) and *Chen v. City of Houston*, 206 F.3d 502 (5th Cir. 2000).  Unfortunately, the United States Census Bureau eliminated citizen voting age population from the 2010 Census.  However, this number can be effectively estimated by using the voting age population (VAP), the citizen voting age population (CVAP) from the American Community Survey and the Hispanic surname registration numbers (SSVR) for Galveston County.  The American Community Survey currently calculates the Hispanic citizen voting age population for Galveston County to be 14.63 percent of the population. According to the calculations of the State of Texas, 13.08 Percent of the registered voters in Galveston County possess a Hispanic surname.  And the Hispanic voting age population is 19.64 percent of the total voting age population in Galveston County.

Galveston County in accordance with the Texas Constitution has four single member districts for the County Commissioners Court and one at large district.  One of the single member districts in Galveston County is majority minority and is currently represented by an African-American commissioner (Dist 3).  There is a second County Commissioner District which has a minority population of 39.8 percent which currently

elects a non-Hispanic white Democrat (Dist 1).[3]  The remaining two county commissioner districts both elect non-Hispanic Republicans.  The countywide district also elects a non-Hispanic Republican.  As the countywide results indicate Democrats do not receive a majority of the votes for Commissioner in Galveston County.

The proposed County Commissioner map retains the majority minority district for the current incumbent African-American commissioner and retains a district which will probably reelect the current non-Hispanic white Democrat incumbent.  Given the current demographic makeup of the county the minority population is receiving essentially proportional representation with only one majority minority district.  This is because the minority citizen voting age population is no larger than the mid-30% range and potentially much smaller.  Depending on how you view the pertinent number of total seats on the commission to analyze (four seats or five) one seat would constitute either 25% or 20% of total representation.  One seat therefore provides the minority population of Galveston County essentially with proportional representation.  A second seat would provide representation in excess of the total minority citizen voting age population.  To provide more than this would require that the minority population components receive super proportional representation which would cause a constitutional violation.  See

---

[3] Both districts were seriously under populated as a result of the 2010 Census.  The majority minority district was 12.76% under populated and required nearly 10,000 additional people.  Dist. 1 was 16.03% under populated and the other two districts were overpopulated.  Any reductions in minority population did not effect performance and was necessary to meet one person on vote.  In the redistricting context a reduction in the number or percentage of minority voters in a particular district may have no impact on the opportunity for effective political participation.  For example, the minority percentage might remain so high that minority control is not compromised; the minority percentage might have begun so low that minority influence could not be effectively reduced further, or reductions in the minority percentage in one district might be effectively counterbalanced by increases in others. The Justice Department also suggests that where compliance with the one person, one vote requirement necessitates the reduction of minority voting strength, there should be no §5 objection.  Supplementary information accompanying the Department's Procedures of Administration of §5, 52 FED. REG. 487-88 (Jan. 6, 1987).

*United Jewish Organizations v. Carey*, 430 U.S. 144 (1977), *Shaw v. Reno*, 509 U.S. 630 (1993) and *Johnson v. DeGrandy*, 512 U.S. 997 (1994).

The Galveston County commission redistricting map was intended to provide near as legally allowable proportional representation. During this latest redistricting cycle every redistricting map which has taken this approach has been precleared by the Department of Justice administratively (e.g. Virginia House of delegates, North Carolina legislative and congressional, South Carolina legislative and congressional, Louisiana legislative and congressional, as well as numerous local jurisdictions). Given that Plaintiffs cannot assert that the new Galveston County Commissioners Court map, which was drawn to comply with the one person one vote provisions of the United States and Texas constitutions, reduces the minority representation on the County commissioners Court or denies an additional majority minority district to the plaintiffs to which they could be legally entitled under § 5 of the Voting Rights Act, then the map will almost certainly precleared prior to the December 15, 2011 deadline. Indeed in their complaint, Plaintiffs do not assert that they could draw an additional majority minority district or that the existing majority minority district would cease to elect a candidate of the minority communities' choice. Given this situation it would seem inappropriate for this court to interfere in an election which could almost certainly be performed under a precleared legislatively enacted map and sufficient time should be allowed for this to occur.

## IF THE COURT AGREES WITH MOVEMENTS IN THIS MATTER THEN THE COURT LACKS SUFFICIENT TIME TO IMPOSE A DIFFERENT LEGAL REDISTRICTING MAP FOR THE GALVESTON COUNTY COMMISSION

If the court agrees with the Plaintiffs that a TRO is required because of the proximity of the opening of filing, then the very same logic which would suggest that such a restraining order is required would also prevent the court from being able to impose a legal redistricting map for Galveston County Commissioners Court within that same narrow time frame.  On the other hand all indications are that before a final date that would not allow the primaries take place in the proper time frame an administratively precleared redistricting map will be available and this matter will be moot.  Any rational balancing of the harms test clearly indicates that this is the only prudent course for the court.  Because of this application of the third and forth prongs of the Fifth Circuit standard for preliminary relief ((3) the threatened injury to the party seeking the injunction outweighs the threatened injury to the party to be enjoined, and (4) granting the preliminary injunction will not disserve the public interest)[4], it would appear to require that the court take no action.  In short, the Court should deny the restraining order and preliminary injunction regarding Galveston County Commissioners Court districts at this time.

---

[4] In order to prevail on a motion for preliminary injunction, [Plaintiffs] must establish that (1) there is substantial likelihood that it will prevail on the merits, (2) there is a substantial threat that the party will suffer irreparable injury if the preliminary injunction is denied, (3) the threatened injury to the party seeking the injunction outweighs the threatened injury to the party to be enjoined, and (4) granting the preliminary injunction will not disserve the public interest. *Walgreen Co. v. Hood*, 275 F.3d 475, 477 (5th Cir. 2001).

**PROPORTIONALITY, TIMELINESS AND BALANCING OF HARMS APPLIES O JUSTICE OF THE PEACE AND CONSTABLE REDISTRICTING**

All the arguments regarding proportionality, timeliness and balancing of the harms apply equally to the Justice of the Peace Constable districts.[5]

WHEREFORE, Galveston County and The Honorable Mark Henry, in his official capacity as Galveston County Judge, respectfully request that the Court DENY the Application for a Temporary Restraining Order and Preliminary Injunction.

Respectfully Submitted,

**BEIRNE, MAYNARD & PARSONS, L.L.P.**

/s/ Joseph M. Nixon
James E. "Trey" Trainor, III
State Bar No. 24042052
Dalton Lamar Oldham
Joseph M. Nixon
401 W. 15th Street, Suite 845
Austin, Texas 78701
Telephone: (512) 623-6700
Facsimile: (512) 623-6701
ttrainor@bmpllp.com
jnixon@bmpllp.com

**ATTORNEYS FOR GALVESTON COUNTY AND THE HONORABLE MARK HENRY**

---

[5] There are clearly five justice of the peace/constable districts not four. Additionally, one person one vote does not apply because these are judicial districts.

- 9 -

## CERTIFICATE OF SERVICE

      I hereby certify that on the 21st day of November 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

                                      /s/ Joseph M. Nixon
                                      Joseph M. Nixon

1463999v.5  IMANAGE 105773