UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| THE HONORABLE TERRY PETTEWAY, et al., § § | | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. G-11-511 |
| THE HONORABLE MARK HENRY, et al, | § § § | |
| Defendants. | § | |

**ORDER**

In light of the plaintiffs' advisory notice to the court filed today[1], IT IS ORDERED: The majority opinion contained in the court's December 9, 2011 order[2] is AMENDED as follows:

**AMENDED ORDER**

Before the court is the plaintiffs' application for a temporary restraining order and injunction. The district court's previous order granting a temporary restraining order is VACATED. The motion for a preliminary injunction is held for resolution until after December 19, 2011.[3]

**I**

This is a Voting Rights Act case arising out of redistricting in Galveston County following the 2010 Census. Galveston County, the defendant, has adopted new redistricting plans for county

---

[1] Docket no. 33.

[2] Docket no. 32.

[3] Judge Kenneth Hoyt dissented from this order. *See id.* Neither the plaintiffs' advisory notice nor the amendment to the majority opinion affects his dissent.

commissioner, justice of the peace and constable districts.[4] The Voting Rights Act, which applies to Texas and its political subdivisions, requires Galveston County to first obtain judicial or administrative preclearance before implementing a voting change, including a reapportionment plan. 42 U.S.C. § 1973c; *McDaniel v. Sanchez*, 452 U.S. 130, 137 (1981). Specifically, § 5 of the Voting Rights Act requires Galveston County to either (1) submit the proposed change to the Attorney General of the United States, who must then object to the plan within sixty days; or (2) file a declaratory judgment action in the U.S. District Court for the District of Columbia. *McDaniel*, 452 U.S. at 137. Plaintiffs concede that if the Attorney General does not interpose an objection within sixty days of the plan's submission to the Department of Justice, Galveston County may implement its plans in future elections. *See* 28 C.F.R. §51.1(a)(2). It is undisputed that Galveston County submitted for preclearance its new plan for the commissioners election to the Department of Justice on October 14, 2011.[5] But it is also undisputed that preclearance has not yet occurred. Galveston County maintains that it has no intention of enforcing the plans without first obtaining preclearance.

Plaintiffs are one citizen and seven elected officials in Galveston County, all of whom are registered to vote in that county. The plaintiffs assert that preclearance under § 5 of the Voting Rights Act likely will not occur before December 15, 2011, the deadline for filing to run for office in Galveston County.[6] Asserting that Galveston County's new redistricting plans are therefore

---

[4] County Judge Mark Henry, sued in his official capacity as Galveston County's Chief Officer, is also a defendant.

[5] Galveston County also has sought preclearance from the D.C. court. *See Galveston Cnty., Tex. v. United States*, No. 1:11-CV-01837. The plaintiffs clarified in a December 12, 2011 advisory notice that the Department of Justice's response is not anticipated until December 19, 2011.

[6] The litigation addressing state-wide redistricting in the State of Texas set the deadline for filing for elections as December 15, 2011. *See Perez v. State*, No. 5:11-CA-00360 (W.D. Tex. Nov. 4, 2011).

unlawful, the plaintiffs moved the district court for a temporary restraining order and preliminary injunction to prevent their implementation. Also involved in this lawsuit are three citizens and registered voters who have intervened, claiming effects from Galveston County's newly adopted plans.

The district court granted a temporary restraining order against implementation of Galveston County's new plans. The Voting Rights Act charges this three-judge panel with more fully evaluating the plaintiffs' request for an injunction. 28 U.S.C. § 2284 (An order previously ruled upon by a single judge in a three-judge matter, "unless previously revoked by the district judge, shall remain in force only until the hearing and determination by the district court of three judges of an application for a preliminary injunction."). The panel's review encompasses determining "what temporary remedy, if any, is appropriate," pending the plans' preclearance. *Lopez v. Monterey Cnty., Calif.*, 519 U.S. 9, 23 (1996). The plaintiffs and intervenors have submitted for the panel's consideration proposed interim redistricting plans to govern the upcoming elections.

## II

Although plaintiffs do not dispute that Galveston County's request for preclearance is pending, they assert that Galveston County did not submit its request for preclearance in a timely manner. Plaintiffs further maintain that preclearance is unlikely to be granted and urge the imposition of their proposed interim voting plan to govern upcoming elections.[7] Galveston County maintains that this court's intervention is premature. Galveston County has made clear it has no

---

[7] Its proposed plan would govern the commissioner elections only. The plaintiffs concede that the justices of the peace and constable redistricting need not comply with the Constitution's one-vote, one-person principle, and that if the Department of Justice does not grant preclearance, elections may proceed under old plans. *See Chisom v. Roemer*, 501 U.S. 380 (1981) (noting only that the one-person, one-vote principle does not apply to judicial elections). Despite this distinction, we need not assess the validity of remedies at this phase.

intention of implementing its redistricting plans without first obtaining preclearance. Galveston County further asserts that it is highly likely that it will obtain preclearance in time to allow elections for County Commissioners to be held under districts submitted for preclearance.

We find that any action on plaintiffs' motion is premature until after December 19, 2011. Section 5 of the Voting Rights Act does not grant this court authority to determine whether a voting change was adopted with a discriminatory purpose and whether it would have a discriminatory effect on minority voting strength. *Lopez v. Monterey Cnty., Calif.*, 519 U.S. 9, 23–24 (1996). The Act reserves that substantive determination exclusively for the U.S. Department of Justice and the U.S. District Court for the District of Columbia. *Id.* Our role is strictly limited:

> [We] may determine only [1] whether § 5 covers a contested change, [2] whether § 5's approval requirements were satisfied, and [3] if the requirements were not satisfied, what temporary remedy, if any, is appropriate. The goal of a three-judge district court facing a § 5 challenge must be to ensure that the covered jurisdiction submits its election plan to the appropriate federal authorities for preclearance as expeditiously as possible.

*Id.* (citations omitted).

Plaintiff has not shown that these requirements are met. Although it is undisputed that § 5 applies to Galveston County's reapportionment plan, plaintiffs have not shown that § 5's approval requirements were not satisfied. Section 5 demands our intervention only where a legislative body has failed to seek preclearance for a voting change. *See* 42 U.S.C. § 1973c. Galveston County has followed the statute's terms by seeking the approval of the Department of Justice and the District of Columbia District Court. Plaintiffs' request that we impose an interim plan is premature.[8] We cannot properly consider "what temporary remedy, if any, is appropriate," *see Lopez*, 519 U.S. at 23,

---

[8] It does not matter that Galveston County has not yet received preclearance—only that it has requested it.

4

without first allowing the Department of Justice or the District of Columbia District Court to assess the validity of Galveston County's plans. Our "goal [when] facing a § 5 challenge must be to ensure that the covered jurisdiction submits its election plan to the appropriate federal authorities for preclearance as expeditiously as possible." *Id.* at 24. That has already been done. Any remedial action on our part before December 19, 2011 would disregard the limited authority the Voting Rights Act grants us. *See id.;* 42 U.S.C. § 1973c.

IT IS THEREFORE ORDERED: The district court's previous order granting the plaintiffs' temporary restraining order is VACATED pending our further review.

IT IS FURTHER ORDERED: Any person wishing to stand for election as county commissioner, justice of the peace, or constable of Galveston County, Texas in the primary currently scheduled for March 6, 2012 may file for election under the unprecleared plan, with the understanding that if the U.S. Department of Justice or U.S. District Court for the District of Columbia disallow preclearance by the end of the day on December 19, 2011, their filing fees will be refunded, and this three-judge court will determine what temporary remedy to adopt at that time.[9]

December 12, 2011

EMILIO M. GARZA
UNITED STATES CIRCUIT JUDGE

MELINDA HARMON
UNITED STATES DISTRICT JUDGE

---

[9] If forced to craft an interim remedy, this court has the authority to postpone these local election deadlines if necessary. *See Perez v. State*, No. 5:11-CA-00360 (W.D. Tex. Nov. 4, 2011).