IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| HONORABLE TERRY PETTEWAY, | § | |
| HONORABLE DERRECK ROSE, | § | |
| HONORABLE MICHAEL MONTEZ, | § | |
| HONORABLE PENNY POPE, | § | |
| HONORABLE SONNY JAMES, | § | |
| HONORABLE STEPHEN HOLMES, | § | |
| HONORABLE PATRICK DOYLE and | § | |
| ROOSEVELT HENDERSON, | § | |
| | § | Civil Action No. 3:11-cv-511 |
| *Plaintiffs* | § | |
| | § | |
| vs. | § | |
| | § | |
| GALVESTON, TEXAS; and | § | |
| THE HONORABLE MARK HENRY, in his | § | |
| capacity as Galveston County Judge | § | |
| | § | |
| *Defendants* | § | |

## PLAINTIFFS' MOTION FOR RECONSIDERATION OF ENTRY OF COURT ORDERED INTERIM REDISTRICTING PLAN

NOW COME Plaintiffs, THE HONORABLE TERRY PETTAWAY, THE HONORABLE DERRICK ROSE, THE HONORABLE MICHAEL MONTEZ, THE HONORABLE PENNY POPE, THE HONORABLE SONNY JAMES, THE HONORABLE PATRICK DOYLE THE HONORABLE STEPHEN D. HOLMES AND ROOSEVELT HENDERSON (hereinafter referred to as "Plaintiffs"), and files this Motion for Reconsideration of Entry of Court Ordered Interim Redistricting Plan and would show the Court as follows.

On January 20, 2012 this Panel Court entered its Order on Motion for Reconsideration granting injunctive relief but taking the determination of an interim plan under advisement. Order dated January 20, 2012, Dkt. 45, p. 1. The Panel Court stated that "the timeframe for DOJ

1

review and/or decision in the impending litigation may impact Galveston County is perhaps imminent, and therefore, implementing an interim plan may yet be premature." *Id* at 2.

**Preclearance Has Not Been Obtained**

The United States Attorney General has determined that Galveston County failed to meet its burden of showing that the proposed redistrictings have neither the purpose nor will have the effect of denying or abridging the right to vote on account of race or color or membership in a language minority group. *See* Letter of Objection issued March 5, 2012, attached as Exhibit A. The Galveston County redistricting plans did not receive preclearance approval from the DOJ.

However, in addition to administrative preclearance review by the DOJ, Galveston County filed suit seeking a declaratory judgment on October 17, 2011. *See Galveston County v. United States of America, et al*. Ca. No. 1:11-cv-1837, filed in the United States District Court for the District of Columbia. Galveston County had issues with service of process on the Government and did not effectuate service until December 16, 2011. The Government had 60 days to file its Answer and did so on February 14, 2012. The likelihood that a trial on the merits and a decision being rendered in time for the 2012 election is impossible.

Until the U.S. District Court for the District of Columbia grants a declaratory judgment in favor of the Section 5 covered jurisdiction, Defendant has not obtained the requisite Section 5 preclearance and, therefore, cannot implement the redistricting plans that affect voting in the county commissioner's election in Galveston County, Texas. *See* 28 C.F.R. §51.10.

**Necessity for Court Ordered Interim Redistricting Plan**

This Section 5 enforcement court is authorized by *Lopez I* to implement a temporary remedy. *Lopez v. Monterey County [Lopez I]*, 519 U.S. 9 (1996). Ordinarily, the only temporary remedy that would be appropriate would be the issuance of injunctive relief

that would prohibit the implementation of the unprecleared redistricting plan, which this Panel Court has already ordered.

Recently, the Three Judge Court hearing the Statewide Redistricting Case issued its Order making certain adjustments to the election schedule for the 2012 elections including, but not limited to:

- reopening the filing period (first day to file is March 2, 2012 and last day to file is March 9, 2012);
- setting the last day for counties to make voting precinct changes to give effect to a redistricting plan (on or before March 20, 2012);
- setting the last day for county voter registrars to issue voter registration cards (on or before April 25, 2012); and
- setting the 2012 General Primary Election date (Mary 29, 2012).

*See* Order dated March 1, 2012 in Civ. Action No. 5:11-cv-00360, Dkt. 685. Attached as Exhibit B.

However, unless the County's electoral mechanism and responsibility for conducting elections are to be completely ignored, this Court is faced with the unwelcome obligation to devise a temporary court-ordered plan in time for the 2012 election cycle. *Wise v. Lipscomb*, 437 U.S. 535, 540 (1975) ("Legislative bodies should not leave their reapportionment tasks to the federal courts; but when those with legislative responsibilities do not respond, or the imminence of a state election makes its impractical for them to do so, it becomes the 'unwelcome obligation' . . . of the federal court to devise and impose a reapportionment plan pending later legislative action.").

**Constables and Justices of the Peace Precincts**

3

When determining the appropriate remedy for Constables and Justices of the Peace precincts, the Court must first determine whether the one person, one vote principle as articulated in *Reynolds v. Sims*, 377 U.S. 533 (1964) applies. The controlling factor is whether the Constables and Justices of the Peace's powers are general governmental powers and impact on all citizens throughout the precincts. *See Ball v. James*, 451 U.S 355 (1981); *Slisz v. Western Regional Off-Track Betting Corp.*, 382 F. Supp. 1231 (W.S. N.Y. 1974). Such general governmental powers are namely, the imposing of ad valorem property taxes or sales taxes, enacting any laws governing the conduct of citizens, administering such normal functions of government as the maintenance of streets, the operation of schools, or sanitation, health, or welfare services.

The duties and powers of the Constables and Justices of the Peace are quasi-judicial in nature and are narrowly tailored; they are not general governmental powers[1]. Therefore, the Panel Court should order reversion to the last legal (benchmark) plan. A reinstatement of a prior election practice does not require preclearance, therefore the County may use the benchmark plans for Constables and Justices of the Peace, as the benchmark is the most recent practice that was both precleared and in "force or effect". *Kennedy v. Riley*, 128 S. Ct. 1970 (2008).

The Supreme Court, in *Perry v. Perez*, 565 U.S. ___, slip op. at 3 (2012), stated that failure of a plan to receive preclearance prior to an upcoming election does not, by itself, require a court to take up the task because, in most circumstances, the last enacted plan simply remains in effect until the new plan receives preclearance. *Perez* at 3. This is exactly the case here. The

---

[1] Constables generally handle criminal Investigation, delivering subpoenas to witnesses, serving as a bailiff, executing judgments and warrants, service of process, assist the Justice of the Peace, County and District courts, assist the Attorney General's Office with child support, patrol functions, and enforcement of laws regarding hot checks, truancy, and traffic violations. Justices of the Peace are elected officials who preside over justice courts hearing misdemeanor and civil cases.

4

last enacted plan remains in effect until the new plan receives preclearance. Therefore, the Court should reconsider ordering reversion to the last legal plan.

**Commissioners Court Precincts**

Since the 2011 redistricting plan did not receive preclearance, the last enacted plan (2001) is still in effect because it is the most recent practice that was both precleared and in force or effect. *See Riley v. Kennedy*, 128 S. Ct. 1970 (2008). Recently, the Supreme Court stated:

> The failure of a State's newly enacted plan to gain preclearance prior to an upcoming election does not, by itself, require a court to take up the state legislature's task. That is because, in most cases, the State's last enacted plan simply remains in effect until the new plan receives preclearance. But if an intervening event- most commonly, as here, a census renders the current plan unusable, a court must undertake the "unwelcome obligation" of creating an interim plan.

*Perry v. Perez*, 565 U.S. ___, 132 S.Ct. 934, slip op. at 3 (2012).

The 2001 plan is malapportioned and violates the Equal Protection Clause of the Fourteenth Amendment because it contains precincts that no longer meet the one person, one vote standard. The Equal Protection Clause of the Fourteenth Amendment guarantees one person, one vote and that every voter is equal to every other voter, no matter where they live. *See Reynolds v. Sims*, 377 U.S. 533, 568 (1964). The Fourteenth Amendment's Equal Protection Clause reaches the exercise of state power however manifested, whether exercised directly or through subdivisions of the State. *See Avery v. Midland County*, 390 U.S. 474, 479-480 (1968). As a local government, Galveston County's actions are the actions of the State. The Supreme Court stated:

> When the State apportions its legislature, it must have due regard for the Equal Protection Clause. Similarly, when the State delegates lawmaking power to local government and provides for the election of local officials from districts specified by statute, ordinance, or local charter, it must insure that those qualified to vote have the right to an equally effective

5

> voice in the election process. If voters residing in oversize districts are denied their constitutional right to participate in the election of state legislators, precisely the same kind of deprivation occurs when the members of a city council, school board, or **county governing board** are elected from district of substantially unequal population.
> *Id* at 480 (emphasis added).

After the 2010 census, the Galveston County population totals showed a population variance of 39.53% between the most and least populated precincts. The most populated precinct, Precinct 4, has approximately 89,939 persons and Precinct 1, the least populated precinct, has approximately 61,152 persons.

The Equal Protection Clause of the Fourteenth Amendment to the Constitution permits *no* substantial variation from equal population in drawing districts for units of local government having general governmental powers over the entire geographic area served by the body. Based on the population figures above, the ideal population size for a precinct is 72,827 persons.

In addition, the standard deviation has evolved over time to allow a plan a maximum of 10% deviation. For local government districts, equality in population means there must be no more than a ten-percent overall deviation from the ideal district size. *See White v. Regester*, 412 U.S. 755 (1973); *Gaffney v. Cummings*, 412 U.S. 735 (1973). The deviation here is 39.53% which violates the Equal Protection Clause of the Fourteenth Amendment and renders the plan unusable therefore this Panel Court is faced with the need to create an interim plan.

**Interim Plan**

The Supreme Court stated that where shifts in population have been relatively small, a court may need to make only minor or obvious adjustments to the existing districts in order to devise an interim plan. *Perez* at 4. In addition, the Supreme Court stated that only where population shifts are so large that no semblance of the existing plan's district lines can be used,

an existing plan offers little guidance to a court drawing an interim map. *Perez* at 4. This is not the case here. Even assuming *arguendo* that Galveston County had large population shifts, semblance can be given to the existing plan's district lines and it still offers this Court guidance in creating an interim plan.

The Supreme Court also observed that when a court is faced with drawing district lines by judicial order, it should as a general rule, be guided by legislative policies underlying a State's plan to the extent those policies do not lead to violations of the Constitution or the Voting Rights Act. *Id*. A district court making use of an unprecleared plan must take care not to incorporate into the interim plan any legal defects in the unprecleared plan. *Id* at 5.

It is difficult for this Court to be guided by the legislative policies underlying Galveston County's unprecleared plan because Galveston County did not adopt any redistricting criteria for use during the redistricting process. Therefore, this Court only has the County's unprecleared plan and the statements made by the County in its DOJ submission (The County stated: "Similarly, in order to maintain continuity of districts and limit the amount of voter confusion the [Commissioners] court attempted to maintain the core of the current districts and minimize the changes to the districts …" Galveston County Section 5 Submission, October 14, 2011, p. 6) to evaluate for legislative policies. Simply looking at the unprecleared plan does not by itself indicate what the legislative policies underlying the County's plan are. A court analyzing a statewide plan for the Texas House would have 150 districts look at trends geographically, demographically, socio-economically and regionally to determine underlying policies. A court could look at urban vs. rural, metropolitan population areas, the east part of the state vs. the southern part, etc. Trends would be easily identifiable. This is not the case here. The Court in this case is looking at only four commissioner precincts.

In addition, it is logistically difficult to give effect to the County's legislative policies underlying the uncleared plan while at the same time not incorporating any legal defects into the interim plan. The letter of objection identifies two general infirmities with the County's plan. (Exhibit A, pp. 2-3). First, the DOJ found that the County failed to meet its burden of demonstrating that the plan was not adopted with a discriminatory intent. (Exhibit A, p. 2) Second, it found that the plan retrogressed the voting strength of minority voters in Commissioner Precinct 3. (Exhibit A, pp2-3) It more specifically identified the inclusion of the Bolivar Peninsula in Commissioner Precinct 3 as problematic with regard both to the intent issue and the retrogression issue. (Exhibit A, p. 2) The Court must therefore order a plan that complies with Section 5 and one that does not include Bolivar Peninsula in Precinct 3. The only Plan before the Court which exactly accomplishes this is the plan developed by Judge Hoyt for the Court.

**Section 5 Prejudgment**

A local district court drafting an interim plan must be careful not to prejudge the merits of the preclearance proceedings. "The court should presume neither that a State's efforts to preclear its plan will succeed nor that it will fail." *Id* at 6. The Supreme Court elaborated further, stating:

> The need to avoid prejudging the merits of preclearance is satisfied by taking guidance from a State's policy judgments unless they reflect aspects of the state plan that stand a reasonable probability of failing to gain §5 preclearance. And by "reasonable probability" this Court **means in this context that the §5 challenge is not insubstantial.** That standard ensures that a district court is not deprived of important guidance provided by a state plan due to §5 challenges that have no real probability of success but still respects the jurisdiction and prerogative of those responsible for the preclearance determination. And the reasonable probability standard adequately balances the unique preclearance scheme with the State's sovereignty and a district court's need for policy guidance in constructing an interim map.

*Id* at 6-7. Emphasis added.

Plaintiffs believe that there is reasonable probability that the County's map will fail to gain §5 judicial preclearance. The preclearance process requires the covered jurisdiction to demonstrate

8

that its proposed change "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color." *Perez* at 2. Defendants have the burden of demonstrating that they have complied with this requirement. The DOJ has denied preclearance through the administrative process and therefore the proposition that the County will fail to secure judicial preclearance is not insubstantial. Under the unprecleared plan, the combined VAP of Hispanics and Blacks in District 1 is 28.33%4, which is a reduction of 6.94% from benchmark. The combined VAP of Hispanics and Blacks in District 3 is 58.4% which is a reduction of 2.29 % from benchmark. These reductions along with re-aggregated election data submitted by Plaintiffs' demonstrate that the unprecleared plan impacts upon Hispanic and Black voters' ability to elect candidates of their choice in Precincts 1 and 3. Dkt. 41-8, pp. 1-8; Dkt. 41-9, pp. 1-12; Dkt. 41-10, pp. 1-14; and Dkt. 41-11, pp. 1-17. Moreover, Plaintiffs believe that their claims are not insubstantial and even more importantly, DOJ has determined that the plan is retrogressive and that the County could not prove that its intent was not to discriminate. (Exhibit A, p. 3) Therefore, there Plaintiff's claims are not insubstantial and there is a reasonable probability that the unprecleared map will fail to gain §5 judicial preclearance, as it already has at the administrative level.

As described in this Court's prior order, the interim plan previously adopted by the Court correctly anticipated the problematic Section 5 features of the adopted unprecleared plan, and corrected for those defects. (Judge Hoyt's plan moves the Bolivar Peninsula back into Commissioner Precinct 1, and undoes the retrogression in Precinct 3) Moreover, since the Court's plan attempted to maintain the cores of the districts from the benchmark plan, it also, in other aspects, comported with the County's policy goals as articulated in its submission letter.

## V.     CONCLUSION

Plaintiffs therefore, move this Court to order that elections should proceed for Constable and Justice of the Peace under the benchmark plan, and to reconsider the adoption of the interim Court ordered plan for Commissioner precincts developed by Judge Hoyt, so that elections can proceed pursuant to the newly ordered election schedule for the for the May 29, 2012 Texas Primary Elections.

DATED:  March 6, 2012                              Respectfully Submitted,

*/s/ Jose Garza*
JOSE GARZA
State Bar No. 07731950
Law Office of Jose Garza
7414 Robin Rest Dr.
San Antonio, Texas 78209
(210) 392-2856
garzpalm@aol.com

Melissa C. Killen
SBN: 24034367
KAUFMAN & KILLEN, INC.
100 W. Houston St., Ste. 1250
San Antonio, Texas 78205
Ph (210) 227-2000x17
mkillen@kk-lawfirm.com


**BRAZIL & DUNN**

Chad W. Dunn – Attorney In Charge
State Bar No. 24036507
BRAZIL & DUNN
K. Scott Brazil
State Bar No. 02934050
4201 FM 1960 West, Suite 530

10

Houston, Texas  77068
Telephone:  (281) 580-6310
Facsimile:  (281) 580-6362
chad@brazilanddunn.com
scott@brazilanddunn.com

**LAW OFFICE OF NEIL G. BARON**

NEIL G. BARON
Texas State Bar No. 01797080
Law Office of Neil G. Baron
914 FM 517 W, Suite 242
Dickinson, Texas 77539
Telephone (281) 534-2748
Facsimile  (281) 534-4309
neil@ngbaronlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2012, I electronically filed the foregoing document with the Clerk of the United States District Court, Southern District of Texas, Galveston Division, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Joseph M. Nixon
James E. "Trey" Trainor, III.
Dalton Oldham
401 West 15th Street, Suite 845
Austin, Texas 78701
*(Attorneys for Defendants)*

Jeremy B. DuCote
3027 Marina Bay Drive, Suite 204
League City, Texas 77573
*(Attorney for Intervenors)*

*/s/ Jose Garza*