# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**F I L E D**
December 17, 2013
Lyle W. Cayce
Clerk

No. 12-40856

THE HONORABLE TERRY PETTEWAY; THE HONORABLE DERREC ROSE; THE HONORABLE MICHAE MONTEZ; THE HONORABLE PENNY POPE; THE HONORABLE SONNY JAMES; THE HONORABLE STEPHE HOLMES; THE HONORABLE PATRIC DOYLE; ROOSEVELT HENDERSON,

                                      Plaintiffs - Appellees

v.

THE HONORABLE MARK HENRY; GALVESTON COUNTY, TEXAS,

                                      Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, DeMOSS, and SOUTHWICK, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

     This appeal presents only the question of whether the Plaintiffs are prevailing parties in a voting rights case, entitling them to attorney's fees. The underlying case arises from a dispute between the Plaintiffs – seven elected officials and one citizen of Galveston County, Texas – and Galveston County,[1] challenging the County's redistricting following the 2010 census, on grounds that

---

[1] The other nominal defendant in the case is Mark Henry. Henry is the County Judge and Chief Officer of Galveston County. Because he is sued only in his official capacity, we will refer to the County as the defendant.

the County's proposed electoral maps violated the Constitution and the Voting Rights Act. At the conclusion of the adversary proceeding, the Plaintiffs moved for the award of attorney's fees in accordance with 42 U.S.C. § 1973*l*(e). The County opposed the award of attorney's fees on the grounds that the Plaintiffs were not prevailing parties. The district court ruled in favor of the Plaintiffs and awarded fees. The County now appeals. For the reasons that follow, we hold that the Plaintiffs are not prevailing parties and accordingly, are not entitled to attorney's fees. We therefore REVERSE the judgment of the district court and REMAND for entry of judgment for the County.

I.

The Voting Rights Act of 1965 requires that certain jurisdictions with histories of voting discrimination, known as "covered jurisdictions," receive specified approval before implementing changes to any "standard, practice, or procedure with respect to voting. . . ." 42 U.S.C. § 1973c(a). The County is a covered jurisdiction. Before making changes to its election districts, the County must receive preclearance for those changes either by filing a declaratory judgment action in the United States District Court for the District of Columbia or by soliciting preclearance from the Attorney General of the United States. *Id.*

In August 2011, the County drafted new election maps in response to the 2010 population changes and the "one person, one vote" constitutional requirement. The proposed changes affected three county elections: county commissioner, constable, and justice of the peace. On August 30, after holding several public meetings and considering different plans, the County adopted two orders – one proposing new boundaries for the county commissioner election, and the other proposing new boundaries for the constable and justice of the peace elections. The county commissioner plan maintained the same number of districts (four), but reallocated voters among the districts to maintain conformity with the "one person, one vote" principle. The justice of the peace and constable

plan reduced the number of constable and justice of the peace districts from eight to five.

On October 14, the County submitted its redistricting plan for the county commissioners election to the United States Department of Justice (DOJ) for preclearance. The County's plans for the constable and justice of the peace elections were submitted a few days later. The submissions contained all information required by the DOJ, including a provision that the new plans were "effective on the later of January 1, 2012, or when preclearance is obtained."

## II.

On November 14, 2011, one month after the County filed for preclearance of its plan, the Plaintiffs brought this action in the federal district court alleging that the redistricting plans violated the Constitution and the Voting Rights Act. The Plaintiffs sought a declaratory judgment that the proposed maps violated the Constitution as well as Sections 2 and 5 of the Voting Rights Act, an injunction to prevent the County from using the uncleared maps, and an injunction to preclude the County from engaging in unlawful voter registration practices. The County assured the court, as it had the DOJ, that it would not implement any maps before receiving preclearance from the DOJ. The district court nevertheless granted the motion for a temporary restraining order (TRO) on November 21.

Upon the entry of the TRO, the district judge notified the Chief Judge of the Fifth Circuit of the County's request for a three-judge panel pursuant to 42 U.S.C. § 1973c(a) and 28 U.S.C. § 2284. The Chief Judge, in accordance with § 2284, designated two other judges to make up the panel. The three-judge district court immediately held an evidentiary hearing on the TRO. At this hearing, the Plaintiffs presented their own set of maps, which they urged the court to adopt and implement as interim plans. Following the hearing, the court vacated the TRO. The majority of the three-judge district court held that the

No. 12-40856

Plaintiffs were not entitled to a TRO because the County was already seeking preclearance from the DOJ. The dissenting judge made clear that not only would he keep the TRO in place, he would also implement the Plaintiffs' maps.

On December 19, the DOJ requested additional information from the County relating to the maps and their potential impact on minority voters. Contending that this request indicated a decreased likelihood of preclearance, the Plaintiffs asked the three-judge court to reconsider its decision vacating the TRO. The County again argued that injunctive relief was unnecessary because it would not take any action to implement the redistricting plans prior to preclearance. The County provided affidavits from relevant employees reflecting this commitment. Nonetheless, the court granted the Plaintiffs' motion and enjoined the County from taking any steps to enforce the unprecleared plans. The court again, however, refused to implement the maps that the Plaintiffs proposed.

In March 2012, the DOJ formally objected to both of the County's redistricting plans, that is the commissioner plan, and the justice of the peace and constable plan. The DOJ found the plans retrogressive and raised concerns that the County did not meet "its burden of showing that the proposed plan was adopted with no discriminatory purpose." Following the formal objection, the County promptly entered into direct discussions with the DOJ in an attempt speedily to obtain preclearance for a new set of maps. Shortly, on March 23, the County and the DOJ jointly presented to the court a new precleared set of county commissioner maps. Additionally, all parties agreed that the 2001 benchmark map would govern the upcoming justice of the peace and constable elections.[2] The three-judge court entered its final order directing that the elections be held

---

[2] Because the justice of the peace and constable elections are not subject to the "one person, one vote" principle, the 2001 maps could be used notwithstanding the changes in population distribution.

4

under these maps, permanently enjoining the County from implementing any plans for the 2012 elections that had not been precleared, and dissolving the three-judge court.

Following the dissolution, the Plaintiffs filed a motion to recover attorney's fees for the case before a single district court judge. The Plaintiffs contended that the suit had resulted in postponing any elections until the County received preclearance. Furthermore, the Plaintiffs asserted that their advocacy before the DOJ had led to the County's initial submissions being rejected. The County opposed the grant of attorney's fees on the grounds that the Plaintiffs were not prevailing parties and thus not entitled to attorney's fees. Upon considering the arguments of the parties, the district judge entered an order awarding attorney's fees for all of the work claimed by the Plaintiffs, including the lobbying done before the DOJ. The County appeals, challenging the award of attorney's fees.

III.

The County raises two distinct challenges to the fee award. First, the County argues that the Plaintiffs are entitled to no attorney's fees because the Plaintiffs have failed to satisfy the most fundamental requirement for a fee award – prevailing party status. Because the Plaintiffs are not prevailing parties, the County argues, the district court erred in awarding attorney's fees.

Second, the County argues that, assuming the Plaintiffs are prevailing parties in this injunction case, the district court erred in granting fees for lobbying the DOJ during the preclearance process because this work is not sufficiently related to the court litigation for fees to be awarded under 42 U.S.C. § 1973.

A.

We turn first to the County's challenge to the Plaintiffs' prevailing party status under 42 U.S.C. § 1973*l*(e). In an action seeking to "enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its

5

discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs." 42 U.S.C. § 1973*l*(e). A district court's judgment awarding fees is reviewed for an abuse of discretion. *Volk v. Gonzalez*, 262 F.3d 528, 534 (5th Cir. 2001). That discretion does not arise, however, unless the claimant is a "prevailing party." Whether a party is a "prevailing party" is a legal question that we review de novo. *El Paso Indep. School Dist. v. Richard R.*, 591 F.3d 417, 422–23 (5th Cir. 2009).

The Supreme Court has laid out the requirements for establishing prevailing party status. *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598 (2001). The Court held that to achieve prevailing party status, a party must achieve some judicially sanctioned relief that either creates or materially alters a legal relationship between the parties. *Id.* at 604. Building on *Buckhannon*, this court has established three requirements that must be satisfied for a plaintiff to demonstrate prevailing party status: (1) the plaintiff must achieve judicially-sanctioned relief, (2) the relief must materially alter the legal relationship between the parties, and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered. *See Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008). When moving for attorney's fees, "the fee applicant bears the burden of establishing entitlement to an award. . . ." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Under this test, a plaintiff need not receive a final judgment in its favor, but if the plaintiff's success on a claim is purely technical or de minimis, it is not a prevailing party. *See Jenevein v. Willing*, 605 F.3d 268, 271 (5th Cir. 2010); *see also, Dearmore*, 519 F.3d at 521. A plaintiff's success, however, need not address the central claim of the case; instead, a party may attain prevailing status by succeeding on "any significant issue in litigation

which achieves some of the benefit the parties sought in bringing suit." *Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 789 (1989) (internal quotation marks omitted). It is also clear that a defendant's voluntary change in conduct, although perhaps achieving the relief that the plaintiff desired, lacks the necessary judicial imprimatur to support prevailing party status. *Buckhannon*, 532 U.S. at 605.

The parties agree that the first prong of the prevailing party analysis has been satisfied – that is, the Plaintiffs achieved judicially-sanctioned relief flowing from their complaint – a temporary, and then a permanent injunction.

The County, however, challenges whether the other two requirements have been satisfied. First, the County argues that the judicially sanctioned relief – the injunction – failed materially to alter the relationship between the parties; consequently, the injunctive relief was purely technical or de minimis. The County characterizes the relief as de minimis because the injunction only required that the County continue its previously established conduct – refraining from implementing any unprecleared redistricting plans.

Second, the County contends that, irrespective of whether the lawsuit altered the relationship between the parties, it did not change the County's behavior in a way that benefitted the Plaintiffs. Specifically, the County argues that notwithstanding this lawsuit, the County simply followed the routine required by the Voting Rights Act: it sought preclearance from the DOJ, and, when the electoral maps were questioned, it worked with the DOJ to resolve its concerns; and once these concerns were resolved and preclearance granted, it conducted the election under the precleared maps. Although this process and preclearance may have benefitted the Plaintiffs, the County argues, those benefits were the result of the County's voluntary conduct, not the injunction.

In response to the County, the Plaintiffs argue that this lawsuit did in fact materially alter the behavior of the County. They primarily emphasize that the

injunction prevented the County from implementing its redistricting plans prior to preclearance. Specifically, the Plaintiffs point to evidence that the County was taking steps to implement the uncleared plans. The Plaintiffs also point to the DOJ's initial denial of preclearance, which the Plaintiffs assert resulted from their lobbying the DOJ. More generally, the Plaintiffs highlight the undisputed relief granted from their original complaint: a temporary and permanent injunction enjoining the County from implementing any unprecleared redistricting plans.

## IV.

Now that we have addressed the applicable law and set out the respective contentions of the parties, we will turn to consider, first, whether the injunction materially altered the legal relationship between the parties and, second, whether the injunction changed the County's behavior in a way that benefitted the Plaintiffs.

### A.

In arguing that the injunction was a material legal victory, the Plaintiffs contend that, before the injunction issued, the County was preparing to accept candidate filings for the 2012 primary, was preparing to accept filing fees for the 2012 primary, and was preparing for precinct modifications. There is some disagreement about whether the County was engaged in these activities or whether the political parties in the County were responsible for them. The Plaintiffs assert that the distinction is irrelevant and maintain that even if the political parties have some role in the primaries, it is only as a subdivision of the County government. The Plaintiffs are clearly correct that the actions of a political party can be covered by Section 5 if the political parties "act under authority" of a covered jurisdiction. *See Morse v. Republican Party of Virginia,* 517 U.S. 186, 194–95 (1996).

No. 12-40856

Assuming, however, that the County was prepared to permit preliminary filings and was in the process of determining potential polling locations, an injunction to stop these activities is properly characterized as de minimis relief. To iterate what has been stated, the maps had already been submitted to the DOJ for preclearance; and the County had already committed to refrain from implementing the maps until they were precleared. This course of action was neither prompted nor changed by the injunction. Although a new legal relationship between the parties was created by filing the injunction, there is no evidence that such a change materially affected the conduct of the County. It is true that the injunction postponed some preliminary procedural steps that the County (or the political parties) had undertaken to expedite the election once precleared, but the changes were never permanently implemented before preclearance. Filing fees could be refunded, candidate filings could be resubmitted for the correct precinct, and new polling places could be found. In short, these tentative pre-election steps were de minimis considerations to the conduct of a future election and were amenable to a flexible response to conform with the preclearance process.

In this way, this case is similar to *Jenevein*. Jenevein, a Texas state judge, was censured by the Texas State Commission on Judicial Conduct for holding a press conference in his courtroom while wearing his judicial robes. *Jenevein*, 605 F.3d at 269–70. He challenged his censure on First Amendment grounds, and this court remanded, holding that the censure must be expunged to the extent that it addressed his action beyond the use of his courtroom and robe to send his message. *Id.* at 270. On remand, Jenevein filed a motion for attorney's fees on the basis that parts of his censure were ordered expunged. *Id.* Despite the limited legal success of Jenevein's appeal, this court held that he was not a prevailing party. *Id.* at 272. We find the reasoning of *Jenevein* instructive in this appeal; the panel held that Jenevein was not a prevailing party because only

9

No. 12-40856

a few recurring sentences were stricken from the censure order, and all of the violations of the Code of Judicial conduct remained on Jenevein's record. So despite Jenevein's technical victory on some claims, that success did not change significantly the outcome of the censure proceedings against him.

In the same manner here, the injunction had no effect on the implementation of the electoral map, either before or after preclearance. Preclearance had always been an express condition of any election, a position to which the County unequivocally had committed itself. Thus, postponing these preparatory activities for the eventual election under a precleared map cannot be characterized as a material legal success, and consequently, the Plaintiffs have failed to meet the test of prevailing parties.

B.

Alternatively, and of equal import to our decision today, we hold that if enjoining election preparations constituted a material change in the conduct of the County, the record nevertheless fails to establish that the injunction directly benefitted the Plaintiffs.[3] The Plaintiffs argue, however, that by stymieing these initial preparatory steps, they were directly benefitted because the injunction prevented the County from taking even further steps toward executing its ultimate plan to conduct an election under the unprecleared maps. But the Plaintiffs engage in only speculation that this result – that is, that no unprecleared election was ever conducted – flowed from the injunction. Once again: The County voluntarily had, on the record, committed to the court and to the DOJ to forbear making any permanent changes in the electoral map until they were precleared by the DOJ. And the assurances were voluntarily made before the injunction was issued. So, the fact that the County may have been

---

[3] The test for prevailing party status is conjunctive, but we nevertheless address both contested prongs to make clear that the judgment rendered herein, reversing the district court, rests on both.

10

enjoined from taking steps towards preparing for a precleared election did not directly or materially benefit the Plaintiffs. Nor have the Plaintiffs shown evidence of any benefit derived from the isolated act, in and of itself, of stopping the County from making preliminary plans for the election. By failing to provide any evidentiary support that the injunction prevented an illegal election – or otherwise benefitted the Plaintiffs – the Plaintiffs have failed to meet their burden of demonstrating that they are prevailing parties.[4] *See Dearmore*, 519 F.3d at 521 (recognizing that to achieve prevailing party status, the relief achieved must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered).

## C.

The Plaintiffs also rely on the outcome of the preclearance proceeding before the DOJ as evidence of their prevailing party status, even for purposes of this injunction litigation. They assert that because the DOJ objected to the County's proposed maps and required further investigation of and ultimately modification of, the County's proposed plan, they are a prevailing party in this litigation. Again, there is simply no evidence to support a causal connection between the court injunction and the DOJ's conduct. Because the County had sought preclearance before this suit was filed, the preclearance process received no jump-start from the Plaintiffs' injunction; nor did the injunction motivate the DOJ to act as far as this record shows. *See Craig v. Gregg County*, 988 F.2d 18,

---

[4] The Plaintiffs do argue that the entry of the injunction itself demonstrates that the three-judge district court felt that the County was moving towards holding an election under an unprecleared plan. The Plaintiffs assert that if this were not the case, the injunction would have been unnecessary and thus never entered. We do not see the need to speculate on the motivation of the three-judge district court in entering the injunction. Suffice it to say that the legal test for the appropriateness of an injunction is distinct from the test we are bound to apply in determining prevailing party status. *Compare Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 268 (5th Cir. 2012) (laying out the factors for determining whether a preliminary injunction is warranted) *with Dearmore*, 519 F.3d at 521 (5th Cir. 2008) (providing the test for prevailing party status).

21 (5th Cir. 1993) (denying prevailing party status under the catalyst theory when suit was filed after preclearance was sought). Although it is true that the Plaintiffs lobbied the DOJ during the preclearance process, we have been shown no evidence of the substance of the Plaintiffs' presentations to the DOJ.[5] Without such evidence, the Plaintiffs cannot meet their burden of demonstrating that they are prevailing parties in the injunction litigation simply based on the DOJ's objection to the County's proposed maps. In the absence of evidence to the contrary, we must assume that whatever aspects of the proposed maps the DOJ found objectionable under the Act would have been treated similarly by the DOJ without the intervention of the Plaintiffs.[6]

V.

---

[5] To the extent that we can divine from the record the effect that the Plaintiffs had on the DOJ's decision, the concerns of the DOJ's objections provide weak support for the Plaintiffs' claims. Throughout the proceedings before the district court, the Plaintiffs requested that the district court use its power to adopt the Plaintiffs' proposed maps. The district court consistently declined the invitation. In proposing these maps, the Plaintiffs focused their objections on the makeup of District One for the county commissioner elections. The Plaintiffs argued that the County's proposed plan impermissibly decreased the Black and Hispanic voting age population of District One, while the Plaintiffs' proposed plan would maintain an acceptable minority influence in the district. The DOJ's objection letter, however, focused entirely on the makeup of District Three for the county commissioner elections; and in allaying the concerns of the DOJ, the County actually moved a predominantly Caucasian neighborhood from District Three to District One, further diluting the combined proportion of Blacks and Hispanics among the voting age population in District One. These actions do not support that the DOJ was influenced by the recommendations of the Plaintiffs.

As to the justice of the peace and constable elections, the County did revert to using the 2001 benchmark plan – the same map that the Plaintiffs asked the district court to adopt – after preclearance was initially denied, but the record contains no evidence that the Plaintiffs' efforts caused the DOJ to object to the County's submission. The mere fact that the DOJ and the County, after negotiations, settled on the same preexisting map that the Plaintiffs suggested does not inform whether the Plaintiffs influenced the DOJ's decision to object to the County's plans.

[6] Finally, the Plaintiffs appeal to the importance of attorney's fees in civil rights litigation, particularly when that litigation can only lead to equitable relief and not monetary damages. We do not underestimate the importance of attorney's fee awards to encourage potential plaintiffs to bring suit, but this general policy argument is irrelevant to the issue of this appeal.

No. 12-40856

To conclude: We hold that the Plaintiffs are not prevailing parties because the injunctive relief the Plaintiffs achieved was not material to the outcome of this case, and, alternatively, nor did this relief directly or materially benefit the Plaintiffs.[7] Accordingly, the judgment of the district court is REVERSED and the case is REMANDED for entry of judgment for Galveston County.

REVERSED and REMANDED for entry of judgment.

---

[7] Because we hold that the Plaintiffs are not prevailing parties, we need not reach the County's second argument regarding the awarding of fees for lobbying the DOJ.